UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　Plaintiff<br><br>v.<br><br>LAWRENCE J. SEMENZA II, *et al.*,<br><br>　Defendants. | Case No.: 2:22-cv-02059-APG-DJA<br><br>**Order Granting in Part Government's Motion for Summary Judgment and Denying Defendants' Motion for Summary Judgment**<br><br>[ECF Nos. 53, 54] |

　　This is a suit to recover criminal restitution and tax assessments levied against Lawrence Semenza II following his 2014 guilty plea to three counts of failing to file a tax return. The Government sues Lawrence Semenza II; his wife, Romie Semenza; and Lawrence's[1] business entity, Lawrence J. Semenza Ltd. (the Semenza Defendants). The Government also sues Romie's son, Philippe Schaad, and Schaad's business entity, Shooting Gallery Publications (the Schaad Defendants).[2] Relevant here, the Government alleges that Lawrence improperly transferred the Semenzas' former home ("Property")[3] to Schaad to prevent the Government from reaching it to satisfy the criminal restitution and tax assessments.

　　The Government moves for summary judgment on Counts One through Six of the complaint, arguing that the Semenza tax assessments should be reduced to judgment and that the proceeds of the Property's sale should be applied to satisfy those tax assessments.[4] ECF No. 53.

---

[1] For convenience and clarity, I refer to the Semenzas by their first names.

[2] The Government also named Tesla, Inc. "because it may claim an interest in" the real property. The clerk of court entered default against Tesla in February 2023. ECF No. 15.

[3] It is undisputed that the Property is comprised of two parcels with an Indian Bend Drive address as described in the Government's complaint. *See* ECF No. 1 at 3-4.

[4] Count Seven, which is to foreclose on federal tax liens, is moot because Schaad sold the Property following an agreement between the Schaad Defendants and the Government. *See* ECF Nos. 23, 24. The sale proceeds totaling $654,246.73 have been deposited into the Court

The Semenza and Schaad Defendants oppose the Government's motion. The Schaad Defendants also move for summary judgment on Counts Four to Six, arguing that Schaad was not the Semenzas' nominee and that the transfer to Schaad was not actually or constructively fraudulent. ECF No. 54.

For the reasons below, I grant the Government's motion to have the Semenza tax assessments reduced to judgment. But I deny the Government's and the Schaad Defendants' motions in all other respects.

## I. LEGAL STANDARD

Summary judgment is appropriate when the pleadings and discovery materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotation omitted). A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party, and a dispute is "material" if it could "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (simplified).

## II. ANALYSIS

The Government moves to reduce to judgment the joint tax assessment against Lawrence and Romie (Count One), the separate tax assessment against Lawrence (Count Two), and the

---

Registry. ECF No. 28. The parties agree that "tax liens will attach to the proceeds of such sale to the same extent and with the same priority as they currently do to the Property." ECF No. 23 at 2. So I deny the Schaad Defendants' motion for summary judgment on Count Seven as moot.

2

corporate income tax assessment against Lawrence J. Semenza, Ltd. (Count Three).  The Government also argues that the Property sale proceeds are subject to a valid tax lien and should be applied to satisfy the Semenzas' tax assessments and Lawrence's criminal restitution.  The Government claims that even if Schaad held title to the Property, it can reach these sale proceeds because the transfer to Schaad was constructively and actually fraudulent (Counts Four and Five) and Schaad was merely the Semenzas' nominee (Count Six).[5]  The Schaad Defendants move for summary judgment on Counts Four to Six, arguing that the Property sale proceeds cannot be used to satisfy the Semenzas' federal tax liabilities.

### A. *Reducing the Tax Assessments to Judgment*

Based on the Internal Revenue Service's tax transcripts and IRS officer Richard Blum's declaration, the Government claims that the Semenzas jointly owe $1,196,632.83 in tax assessments; Lawrence individually owes $45,284.19 in tax assessments; Lawrence owes $252,813.81 in restitution-based assessments; and Lawrence J. Semenza, Ltd. owes $93,554.05 in unpaid corporate income tax. *See* ECF Nos. 53-1 at 3-5; 53-2; 53-3; 53-4; 53-5.  The Semenzas respond that the Government has provided no competent evidence that they are indebted to the United States.  They argue that Blum is not a proper witness because he was never disclosed as a witness as required under Federal Rule of Civil Procedure 26(a)(1)(A).  They also contend that the Government's Rule 30(b)(6) witness, Jeanette Vega, was unable to provide competent testimony regarding the amounts supposedly owed.  The Government replies that it provided the relevant tax transcripts to the Semenzas prior to Vega's deposition, that Vega

---

[5] The Government advances the same argument against Shooting Gallery, Schaad's business entity.  Schaad allegedly transferred the Property to Shooting Gallery about a year after the IRS sent Lawrence a notice of intent to foreclose. ECF No. 1 at 5.

3

was adequately prepared, and that the Semenzas did not ask Vega about the substance of the tax calculations but instead asked her to recite the amounts owed from memory.

The IRS has the authority to make "assessments of all taxes." 26 U.S.C. § 6201(a). "[A]n assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002). This presumption applies to tax deficiency assessments arising from unreported income as long as the IRS "base[s] the deficiency on some substantive evidence that the taxpayer received unreported income." *Hardy v. Comm'r*, 181 F.3d 1002, 1004 (9th Cir. 1999). If the IRS "introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer to show by a preponderance of the evidence that the deficiency was arbitrary or erroneous." *Id.* This "presumption of correctness" applies to assessments based on the IRS's "computer-generated transcripts." *Hawks v. Comm'r*, 71 F. App'x 709, 709 (9th Cir. 2003).

The Semenzas do not dispute that they received the IRS tax transcripts prior to Vega's deposition. They do not deny that the transcripts are presumptively correct. Nor do they contest Blum's specific calculation based on those transcripts. Instead, they contend that the Government cites no competent evidence that they owe anything to the IRS because Vega's testimony is inadequate and Blum's declaration was not previously disclosed.

I am unpersuaded for two reasons. First, the Semenzas have not shown that Vega would be unable to authenticate the tax documents or to support the Government's proposed calculations because they never presented her with those documents during her deposition. Vega testified that she would be able to state what the Semenzas owe based on the tax transcripts. *See* ECF No. 62-1 at 175-76 (Vega's testimony that "if I had the documents in front of me, I can

4

. . . tell you . . . the basis for the assessment, . . . the exact amounts, . . . when they were assessed, [and] for how much they were assessed for"); *see also id.* at 168, 170-71. Vega's testimony suggests that she can authenticate the transcripts. *See id.* at 170 (Vega's testimony that she was prepared to state "how [the assessments] []came about"). The Government cites these presumptively valid tax transcripts as a basis for summary judgment and a means for authenticating them. So the burden shifts to the Semenzas to show why summary judgment is not appropriate. Yet they have not shown that the tax assessment values "cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2).

Second, Blum's declaration supports the Government's motion even if the Government did not disclose Blum as a witness as required under Rule 26(a)(1)(A). Rule 37 enforces Rule 26(a), and non-disclosures that are "substantially justified or . . . harmless" are not excluded from evidence under Rule 37(c)(1). *See generally Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). Here, the Semenzas do not dispute receiving the transcripts to which Blum's testimony refers. The Government represents that in its initial disclosures, it designated an IRS representative "to authenticate and/or explain certain IRS records relating to the issues in this case, and not because it is anticipated that an IRS representative has discoverable personal knowledge of facts relevant in this case." ECF No. 67 at 20 n.10. Under these circumstances, courts routinely find that failure to disclose the particular person authenticating such documents is harmless.[6] And as the Ninth Circuit held, failure to disclose a

---

[6] *See, e.g., Bank of Am., N.A. v. Lake Mead Ct. Homeowners' Ass'n*, No. 2:16-CV-00504-GMN-NJK, 2019 WL 208864, at *6-7 (D. Nev. Jan. 15, 2019) (finding the failure to disclose a witness's name until after discovery closed was harmless where the plaintiff disclosed that an unnamed corporate representative would testify and the witness authenticated documents dealing with an issue that objecting party already knew was central to the litigation); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1120 (N.D. Cal. 2011) (finding the failure to disclose a witness until after discovery closed was harmless where the witness's declaration

5

witness or declaration that authenticates IRS transcripts prior to trial does not render the IRS transcripts inadmissible. *See Hewitt v. Comm'r of Internal Revenue*, No. 21-71161, 2022 WL 3700853, at *1 (9th Cir. Aug. 26, 2022) ("Although the declaration authenticating the IRS transcripts . . . was not disclosed or made available for inspection prior to trial, . . . the exhibits were nevertheless admissible."). Because failure to disclose Blum by name is harmless, Blum's declaration is competent evidence the Government can rely on in its motion.

Therefore, there is no genuine issue of material fact that the Semenzas owe the IRS the amounts indicated in the presumptively correct tax assessments produced in this case. The Government is thus entitled to have those tax assessments reduced to judgment.[7]

### B. Validity of the Tax Lien

The Government argues that the federal tax liens attached to the Property and thus attach to the proceeds from the sale of the Property. It argues that the tax lien is valid against Schaad's interest in the property because Schaad was not a purchaser for value. The Semenzas respond that Schaad was a purchaser for value because he agreed to pay the $415,715 balance of the mortgage on the Property in exchange for title to the Property. The Government replies that Schaad never promised the Semenzas anything in return for title to the Property and that Schaad's subsequent payment of the mortgage was gratuitous.

If a person "neglects or refuses to pay" taxes after a demand, the federal tax code imposes a tax lien on "all property and rights to property, whether real or personal, belonging to such

---

"merely authenticates payroll records and W-2 forms that the [objecting party] already knew existed").

[7] The Government also argues that the Semenzas cannot challenge their tax assessments here based on res judicata, citing past United States Tax Court judgments and the judgment that assessed restitution against Lawrence. Because I grant the Government's motion on other grounds, I need not consider this argument.

person." 26 U.S.C. § 6321. So a tax lien is valid against the taxpayer as soon as the assessment is made. 26 U.S.C. § 6322; *see also TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1463 (9th Cir. 1993) ("The creation of a tax lien does not require a filing of public notice."). "Unless a federal statute requires a government tax lien to be recorded, the unrecorded lien may be enforced against subsequent transferees." *United States v. Vohland*, 675 F.2d 1071, 1074 (9th Cir. 1982). The relevant statute here is 26 U.S.C. § 6323(a). Under Section 6323(a), tax liens "shall not be valid as against any purchaser . . . until notice thereof . . . has been filed" by the IRS in accordance with the recording requirements of Section 6323(f). So for a tax lien to be valid against a subsequent purchaser, "the IRS must file a notice of its lien at a place designated by the laws of the state where the property is deemed to be located." *Maisano v. United States*, 908 F.2d 408, 410 (9th Cir. 1990).

A "purchaser" is "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). "Adequate and full consideration" is consideration that has a "reasonable relationship to the true value of the interest in property acquired." 26 C.F.R. § 301.6323(h)-1(f)(3).

Viewing the facts in the light most favorable to the Schaad Defendants on the Government's motion, a jury may reasonably conclude that Schaad was a purchaser for value under Section 6323(h). The parties do not dispute that Schaad paid the $415,715 balance of the Property's mortgage with his own funds. The parties do not dispute that the IRS did not record any tax lien on the Property until November 2015, several months after the Semenzas transferred the Property to Schaad, Schaad recorded the title to the Property, and Schaad paid off the

7

mortgage. The parties thus do not dispute that the liens would not be valid against Schaad if he were a purchaser for value under Section 6323(h). *See* ECF No. 53 at 25-26 n.5.

Schaad testified that he regarded the transaction as a "purchase" and "investment," and that he based his valuation of the Property on advice from a friend who was a realtor. ECF No. 53-13 at 12-13. The Semenzas similarly testified that Schaad purchased the property with his own funds as an investment. *See* ECF Nos. 53-11 at 21-23 (Lawrence testifying that Schaad used money from an inheritance to purchase the house as an investment); 53-12 at 10 (Romie testifying that Schaad paid about $415,000 to pay off the Property's mortgage to acquire the Property). The Government does not cite any evidence that the purchase price was inadequate. Because a jury may reasonably conclude that Schaad agreed to pay for the Property and that the amount he paid bore a reasonable relationship to the Property's true value, I deny the Government's motion for summary judgment as to the validity of the tax lien against the Property's sale proceeds.[8]

### C.   *Schaad as the Semenzas' Nominee*

The Government also argues that the Property sale proceeds can be applied to the Semenzas' tax assessment because Schaad was the Semenzas' nominee under Nevada law. In the Semenza Defendants' response and the Schaad Defendants' motion, the defendants argue that Schaad was the Property's true owner and was not the Semenzas' nominee.

---

[8] In their motion, the Schaad Defendants do not expressly discuss whether Schaad was a "purchaser" under Section 6323(a). To the extent that the Schaad Defendants meant to move on this issue, I would deny their motion. The Government points to evidence which, construed in its favor, shows that Schaad's subsequent repayment of the approximately $415,000 balance on the Property's mortgage was not part of the bargained-for exchange. *See, e.g.*, ECF No. 53-11 at 21 (Lawrence testifying that Schaad would "take the property subject of the mortgage, which was . . . 412,675" and that "[i]f he wanted, he would pay it off with his investment moneys").

8

A tax lien imposed under Section 6321 "appl[ies] to all property of a taxpayer, including property that is held by a third party as the taxpayer's nominee or alter ego." *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013). Whether a third party is a taxpayer's nominee depends on a "fact-specific state-law inquiry." *Id.* at 1068 (quotation omitted).

Nevada law recognizes that a person my hold title to property as another person's nominee. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 258 (Nev. 2012) (en banc). According to the Supreme Court of Nevada, a nominee is essentially an agent. *See id.* (citing with approval *In re Martinez*, 444 B.R. 192, 206 (Bankr. D. Kan.) (stating that the terms "have nearly identical legal definitions")); *see also United States v. Steele*, No. 3:18-cv-00063-MMD-WGC, 2019 WL 2411422, at *9 (D. Nev. June 7, 2019), *aff'd*, 830 F. App'x 250 (9th Cir. 2020) ("Nevada law appears to recognize the nominee relationship as essentially an agency relationship."). But because the Supreme Court of Nevada has not explained when a nominee relationship arises, I must predict how it would do so. *See Fourth Inv. LP*, 720 F.3d at 1068-69.

To determine whether a nominee relationship exists, courts generally apply a multi-factor test. *See, e.g.*, *id.* at 1069 (considering "the uniform set of factors generally recognized by federal courts" in predicting California law). Several courts interpreting Nevada law take as guidance the specific factors outlined in *Nelson v. United States*, No. CV-N-89-659-BRT, 1990 WL 169245, at *3 (D. Nev. Sept. 27, 1990). *See, e.g.*, *Steele*, 2019 WL 241142, at *9; *United States v. Shaw*, No. 2:16-cv-0220-KJD-NJK, 2018 WL 4682333, at *7-8 (D. Nev. Sept. 28, 2018). These factors are:

> (1) the source of the funds used to purchase the property; (2) the taxpayer's continued use of the property without the payment of a fair rental value; (3) the taxpayer's continued payment of maintenance charges and real estate taxes; (4) the nominees' acquisition of the property without any consideration, or for inadequate consideration; (5) the taxpayer's acts of holding himself out as the owner of the property; (6) the transfer of the property in anticipation of suit or the

        incurrence of liabilities by the taxpayer; and (7) the relationship between the taxpayers and the nominee, that is, whether it is a close one, such as by blood or marriage.

*Nelson*, 1990 WL 169245, at *3. These factors must be evaluated in the totality of the circumstances, and no single factor is dispositive. *Fourth Inv. LP*, 720 F.3d at 1070. "Rather, the overarching consideration is whether the taxpayer exercised active or substantial control over the property." *Id.* (simplified); *see also Viega GmbH v. Eighth Jud. Dist. Ct.*, 328 P.3d 1152, 1158 (Nev. 2014) (en banc) ("Generally, an agency relationship is formed when one person has the right to control the performance of another.").

        Viewing the facts in the light most favorable to the Government on the Schaad Defendants' motion, as discussed above, there is a genuine dispute of material fact about whether Schaad purchased the property for adequate consideration, which creates a genuine dispute on how to weigh factors (1) and (4). In support of factors (2) and (3), the Government cites evidence that after transferrin the Property, the Semenzas resided at the Property without paying rent at a fair market rate but paying maintenance costs and taxes. *See* ECF Nos. 53-15 at 57-58, 70; 53-12 at 13. In support of factor (5), the Government points to evidence that the Semenzas held themselves out as the true owners of the Property. *See, e.g.*, ECF Nos. 53-15 at 60; 53-25; 53-31 at 2. In support of factors (6) and (7), the Government emphasizes the timing of the transaction shortly after Lawrence pleaded guilty and the fact that Schaad is Romie's stepson. A reasonable jury may credit this evidence and find that Schaad was the Semenzas' nominee. So I deny the Schaad Defendants' motion as to the nominee issue.

        Viewing the evidence in the light most favorable to the defendants on the Government's motion, the defendants cite evidence in support of factors (2) and (3) that Schaad merely allowed the Semenzas to live on the Property rent-free for two years to provide Romie with housing

while Lawrence served his prison sentence, but requiring the Semenzas to pay for the Property's maintenance costs. *See* ECF Nos. 53-15 at 57-58; 53-12 at 10-11, 13; 53-13 at 13, 43. In support of factor (5), the defendants cite evidence that Schaad held himself out as the true owner. *See, e.g.*, ECF No. 53-13 at 36 (Schaad testifying that it was his decision to sell the Property and that the proceeds would go to him). A reasonable jury could find that the timing of the Property transfer to Schaad or the familial ties between the Semenzas and Schaad bear little significance because of the purpose of the Property transfer to Schaad. The jury may thus discount factors (6) and (7) in that case. Given that the facts underlying factors (1) and (4) are also genuinely disputed, a jury weighing these factors could find that Schaad was not the Semenzas' nominee. So I deny the Government's motion as to the nominee issue.

### D.  *Fraudulent Conveyance*

In its motion, the Government argues that the Semenzas' transfer of the Property to Schaad was both actually and constructively fraudulent under Nevada law. In the Semenzas' response and the Schaad Defendants' motion, the defendants argue that the transfer was neither actually nor constructively fraudulent. Both the Government and the defendants rely extensively on their discussion of the nominee factors above in their discussion of fraudulent conveyance.

#### 1.  **Actual**

Under Nevada law, a transfer is actually fraudulent if the debtor transfers property "[w]ith actual intent to delay, hinder or defraud any creditor of the debtor." Nev. Rev. Stat. § 112.180(1)(a). The relevant statute outlines eleven "badges of fraud" a court may consider to determine whether someone acted with actual intent to defraud:

> (a) The transfer or obligation was to an insider; (b) The debtor retained possession or control of the property transferred after the transfer; (c) The transfer or obligation was disclosed or concealed; (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) The transfer was of substantially all the debtor's assets; (f) The debtor absconded;

11

(g) The debtor removed or concealed assets; (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Nev. Rev. Stat. § 112.180(2)(a)-(k).

As the parties acknowledge, the nominee factors and the badges of fraud overlap. And as explained above, the parties present competing evidence regarding the extent and significance of the Semenzas' retained control of the Property and whether Schaad provided adequate consideration for the Property. So the facts underlying badges (b) and (h) are genuinely disputed.

The Government points to the timing of the Property transfer to Schaad shortly after Lawrence pleaded guilty, which may support badge (d) and (j). It also notes that Schaad is Romie's stepson, which may support badge (a). Construing the evidence in the Government's favor, a jury may thus reasonably conclude from these factors that the transfer was actually fraudulent. So I deny the Schaad Defendants' motion with respect to actual fraudulent transfer.

Conversely, the defendants cite evidence discussed above that the Semenzas transferred the Property to Schaad because Schaad viewed it as a promising investment and a way to provide Romie with housing while Lawrence was in prison. Though the Government argues that this reading of the evidence is unpersuasive, a jury may credit Schaad's and the Semenzas' testimony regarding the transfer's purpose. This evidence may thus rebut the Government's contention that the transfer was made with actual intent to defraud the United States. So I deny the Government's motion as to actual fraudulent conveyance.

  **2. Constructive**

Under Nevada law, a transfer is constructively fraudulent if the debtor transfers property "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation"

12

and "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due." Nev. Rev. Stat. § 112.180(1)(b)(1). The creditor bears the burden of proving both of these elements. *Sportsco Enters. v. Morris*, 917 P.2d 934, 938 (Nev. 1996).

As discussed above, the Government cites evidence that Semenza transferred the Property to Schaad for nothing in return. It also cites evidence that Lawrence was incurring debts beyond his ability to pay them as they became due. *See* ECF Nos. 53-1 at 3-5; 53-2; 53-3. A reasonable jury viewing the evidence in the Government's favor could conclude that the Property transfer was constructively fraudulent, so I deny the Schaad Defendants' motion as to constructive fraudulent conveyance.

And as discussed above, the defendants cite evidence that Schaad paid adequate consideration for the Property, negating one of the elements of constructive fraudulent conveyance. A reasonable jury viewing the evidence in the Schaad Defendants' favor could conclude that the Property transfer was not constructively fraudulent, so I deny the Government's motion as to constructive fraudulent conveyance.

## III.   CONCLUSION

I THEREFORE ORDER that the United States' motion for summary judgment **(ECF No. 53) is GRANTED IN PART** with respect to its request to reduce the Semenzas' tax assessments to judgment. Accordingly, the Government is entitled to have the following assessments reduced to judgment:

Lawrence and Romie Semenzas' joint tax assessment in the amount of $1,196,632.83;

Lawrence Semenza's separate tax assessment in the amount of $45,284.19;

Lawrence Semenza's restitution-based assessment in the amount of $252,813.81; and

13

Lawrence J. Semenza, Ltd.'s corporate tax assessments in the amount of $93,554.05. These assessment amounts are current as of October 16, 2024. I will not enter judgment on these assessments until final judgment is entered in this case unless the Government successfully moves for entry of partial judgment under Federal Rule of Civil Procedure 54(b). The Government's motion is denied in all other respects.

I FURTHER ORDER that defendants Philippe Schaad and Shooting Gallery Publications' motion for summary judgment **(ECF No. 54) is DENIED**.

DATED this 16th day of May, 2024.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE